UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


WILLIAM L. NETTING, JR.,

        Petitioner,

vs.                        Case No. 3:14-cv-872-J-39JBT

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.
_____

## ORDER

### I.  INTRODUCTION

Petitioner William L. Netting, Jr., challenges a 2008 Duval County conviction for robbery.  In his Petition (Doc. 1), he raises eleven claims for habeas relief.  Respondents filed an Answer in Response to Order to Show Cause (Response) (Doc. 38) with supporting Exhibits.[1]  They also filed Supplemental Exhibit K (Doc. 43); a Response to Order to Show Cause (Doc. 49) concerning appendices one through nine of Supplemental Exhibit K; and relevant exhibits (see e.g., exhibit C (Doc. 49 at 21-49)) not found elsewhere in the record before the Court.  Petitioner filed a Reply (Reply) (Doc. 56).  See Order (Doc. 6).

_____

[1] The Court hereinafter refers to the Exhibits as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit. Otherwise, the page number on the particular document will be referenced.  The Court will reference the page numbers assigned by the electronic docketing system where applicable.

## II.  CLAIMS OF PETITION

Petitioner seeks habeas relief on eleven grounds: (1) ineffective assistance of counsel for failure to call alibi witnesses; (2) ineffective assistance of counsel for failure to properly challenge the pretrial identification as utilizing suggestive procedures in creating the photo lineup, contending counsel failed to understand the <u>Biggers</u>[2] analysis; (3) ineffective assistance of counsel for failure to move to suppress the in-court identification of the perpetrator by the victim; (4) ineffective assistance of counsel for failure to object to suggestive photographs used in the pre-trial identification, to object to the victim's in-court identification, and to object to prosecutorial misconduct; (5) ineffective assistance of counsel for failure to call Officer Sharkey; (6) ineffective assistance of counsel for failure to impeach the testimony of Officer Nelson, Rosann Amondala, and Susan Numbers; (7) ineffective assistance of counsel for failure to file a motion in limine (or a motion to suppress) seeking suppression of the evidence found in Officer Nelson's patrol car; (8) ineffective assistance of counsel for failure to file a motion to suppress evidence recovered at the crime scene; (9) ineffective assistance of counsel for misadvising Petitioner not to take the stand; (10) denial of substantial and procedural rights due to the First District Court of Appeal's (1st DCA) denial

---

[2] <u>Neil v. Biggers</u>, 409 U.S. 188 (1972).

of a writ of habeas corpus for belated appeal; and (11) denial of proper consideration of Petitioner's claims of ineffective assistance of trial counsel due to the trial court's denial of the amended 3.850 motion and/or habeas corpus for ineffective assistance of post conviction counsel. The Court will address the eleven grounds raised in the Petition, see Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992).

Respondents urge this Court to deny the Petition without conducting an evidentiary hearing. Response at 55. It is Petitioner's burden to establish the need for a federal evidentiary hearing. Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011), cert. denied, 565 U.S. 1120 (2012). A district court is not required to hold an evidentiary hearing if the record refutes the asserted factual allegations or otherwise precludes habeas relief.[3] Schriro v. Landrigan, 550 U.S. 465, 474 (2007). In this case, the pertinent facts are fully developed in the record before the Court. As a result, this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert.

---

[3] It is important to note that Petitioner received a post conviction evidentiary hearing in the trial court on claims of ineffective assistance of counsel, and he was appointed counsel to represent him in that post conviction proceeding which took place on May 17, 2011, June 17, 2011, and June 30, 2011. Ex. RR; Ex. SS; Ex. TT.

<u>denied</u>, 541 U.S. 1034 (2004), and no further evidentiary proceedings are required in this Court.

## III.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> 28 U.S.C. § 2254; <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S.Ct. 1432 (2017). "AEDPA limits the scope of federal habeas review of state court judgments[.]" <u>Pittman v. Sec'y, Fla. Dep't of Corr.</u>, 871 F.3d 1231, 1243 (11th Cir. 2017). As such, AEDPA ensures that federal habeas relief is limited to extreme malfunctions, and not used as a means to attempt to correct state court errors. <u>Ledford</u>, 818 F.3d at 642 (quoting <u>Greene v. Fisher</u>, 132 S.Ct. 38, 43 (2011)).

The parameters of review are as follows:

> Thus, under AEDPA, a person in custody pursuant to the judgment of a state court shall not be granted habeas relief on a claim "that was adjudicated on the merits in State court proceedings" unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or ... was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "For § 2254(d), clearly established federal law includes only the holdings of the Supreme Court—not Supreme Court dicta, nor the opinions of this Court." <u>Taylor v. Sec'y, Fla.</u>

<u>Dep't of Corr.</u>, 760 F.3d 1284, 1293-94 (11th Cir. 2014).

As for the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Terry Williams v. Taylor</u>, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under the "unreasonable application" clause, a federal habeas court may "grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts." <u>Id</u>. at 413, 120 S.Ct. 1495. "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" <u>Wiggins v. Smith</u>, 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting <u>Lockyer v. Andrade</u>, 538 U.S. 63, 76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). And "an 'unreasonable application of' [Supreme Court] holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." <u>Woods v. Donald</u>, --- U.S. ----, 135 S.Ct. 1372, 1376, 191 L.Ed.2d 464 (2015) (per curiam) (quotation omitted). To overcome this substantial hurdle, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Harrington v. Richter</u>, 562 U.S. 86, 103, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). This is "meant to be" a difficult standard to meet. <u>Id</u>. at 102, 131 S.Ct. 770.

<u>Pittman</u>, 871 F.3d at 1243-44.

There is a presumption of correctness of state court's factual findings, unless the presumption is rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The standard of proof is demanding, requiring that a claim be highly probable. Bishop v. Warden, GDCP, 726 F.3d 1243, 1258 (11th Cir. 2013), cert. denied, 135 S.Ct. 67 (2014). Also, the trial court's determination will not be superseded if reasonable minds might disagree about the factual finding. Brumfield v. Cain, 135 S.Ct. 2269, 2277 (2015). Also of note, "[t]his presumption of correctness applies equally to factual determinations made by the state trial and appellate courts." Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003)), cert. denied, 568 U.S. 1233 (2013).

In applying AEDPA deference, the first step is to identify the last state court decision that evaluated the claim on its merits. Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016).[4] Once identified, the Court reviews the state court's decision, "not necessarily its rationale." Pittman, 871 F.3d at

---

[4] As suggested by the Eleventh Circuit in Butts v. GDCP Warden, 850 F.3d 1201, 1204 (11th Cir. 2017), cert. denied, 2018 WL 491544 (U.S. Jan. 22, 2018), in order to avoid any complications if the United States Supreme Court decides to overturn Eleventh Circuit precedent as pronounced in Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227 (11th Cir. 2016) (en banc), cert. granted, 137 S.Ct. 1203 (2017), this Court, will employ "the more state-trial-court focused approach in applying § 2254(d)[,]" where applicable.

1244 (quoting <u>Parker v. Sec'y for Dep't of Corr.</u>, 331 F.3d 764, 785 (11th Cir. 2003) (citation omitted)).

Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Harrington v. Richter</u>, 562 U.S. 86, 99 (2011). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." <u>Richter</u>, 562 U.S. at 99-100 (citing <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991)).

Where the last adjudication on the merits is unaccompanied by an explanation, the petitioner must demonstrate there was no reasonable basis for the state court to deny relief. <u>Id</u>. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." <u>Richter</u>, 562 U.S. at 102; <u>Marshall</u>, 828 F.3d at 1285.

Although the § 2254(d) standard is difficult to meet, it was meant to be difficult. <u>Rimmer v. Sec'y, Fla. Dep't of Corr.</u>, 876 F.3d 1039, 1053 (11th Cir. 2017) (opining that to reach the level of an unreasonable application of federal law, the ruling must be objectively unreasonable, not merely wrong or even clear error). Indeed, in order to obtain habeas relief, "a state prisoner must

show that the state court's ruling on the claim being presented . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103.

## IV. PROCEDURAL HISTORY

Before addressing the grounds raised in the Petition, the Court will provide a brief procedural history. Petitioner was charged by amended information with robbery. Ex. A at 17. He filed a Notice of Intention to Claim Alibi. <u>Id</u>. at 39. The defense stipulated that Petitioner was legally arrested by Officer W. H. Nelson, on October 4, 2006, for the crime of possession of cocaine. <u>Id</u>. at 161. The stipulation required that the state refer to the defendant being "detained on an unrelated matter."[5] <u>Id</u>.

On February 19, 2008, the trial court conducted a jury trial. Ex. C; Ex. D. The jury returned a verdict of guilty. Ex. A at 193; Ex. D at 297. The trial court denied the motion for new trial. Ex. A at 196; Ex. B at 262-63.

On March 26, 2008, the trial court held a sentencing proceeding. Ex. B at 239-76. The court sentenced Petitioner to a term of fifteen years in prison. <u>Id</u>. at 275. The court entered

---

[5] The record shows that Petitioner was arrested for an unrelated drug offense.

judgment on February 20, 2008, and sentence on March 26, 2008.  <u>Id</u>. at 197-201.

Petitioner appealed his conviction.  <u>Id</u>. at 206.  Through counsel, Petitioner filed an appeal brief.  Ex. E.  The state filed an answer brief.  Ex. F.  On March 12, 2009, the 1st DCA affirmed per curiam.  Ex. G.  The mandate issued on March 30, 2009.  <u>Id</u>.

On January 19, 2010, pursuant to the mailbox rule, Petitioner filed a Motion for Postconviction Relief (Rule 3.850 motion).  Ex. I at 1-58.  The circuit court ordered the state to file a written response.  <u>Id</u>. at 122.  The state filed its Response to Defendant's Motion for Post-Conviction Relief.  <u>Id</u>. at 123-31.

The trial court appointed Kelly Papa, Esquire, as counsel for Petitioner.  <u>Id</u>. at 134.  She moved to continue the evidentiary hearing to attempt to locate witnesses.  <u>Id</u>. at 136-37.  She also moved for authorization of costs for a private investigator, which the court denied.  <u>Id</u>. at 140-46.  The trial court conducted an evidentiary hearing.  Ex. RR; Ex. SS; Ex. TT.  The court provided a Notice of Ruling, noting that it had received the state's and the defense's proposed orders, the Defendant's Notice of pending memorandum of fact and law, and Defendant's July 7, 2011 letter.  Ex. J at 234.

The trial court denied the Rule 3.850 Motion in its Order Denying Defendant's Motion for Post Conviction Relief Rule 3.850.  Ex. H at 50-156.  Petitioner moved for rehearing, <u>id</u>. at 157-64, and the trial court denied rehearing.  <u>Id</u>. at 165.  Petitioner

appealed. <u>Id</u>. at 167; Ex. K. <u>See</u> Supplemental Exhibit K (Doc. 43) & Response to Order to Show Cause (Doc. 49). The state filed a notice that it would not file a brief. Ex. L. The 1st DCA, on September 10, 2012, per curiam affirmed. Ex. M. The mandate issued on September 27, 2012. <u>Id</u>.

On December 6, 2012, pursuant to the mailbox rule, Petitioner filed a document entitled Verified 3.850 Motion and/or Habeas Corpus for Ineffective Assistance of Postconviction Counsel in the trial court. Ex. N at 1-24. On February 28, 2013, the court denied the motion, finding that it had previously heard and ruled upon Petitioner's Rule 3.850 motion. <u>Id</u>. at 25.

Shortly thereafter, on December 17, 2012, Petitioner filed an Amended 3.850 Motion and/or Habeas Corpus for Ineffective Assistance of Postconviction Counsel. <u>Id</u>. at 26-54. On February 28, 2013, the trial court denied the motion, concluding that it had previously heard and ruled upon Petitioner's Rule 3.850 motion. <u>Id</u>. at 55. Petitioner appealed. <u>Id</u>. at 56; Ex. O; Ex. P. On July 11, 2013, the 1st DCA affirmed per curiam. Ex. Q. Petitioner moved for rehearing. Ex. R. On December 5, 2013, the 1st DCA entered a written opinion finding, "Florida law does not recognize a right to the effective assistance of postconviction counsel," "there is no binding federal precedent to the contrary[,]" Petitioner's claims "were properly denied as a matter of law," and affirming the trial court's decision. Ex. S at 10. The mandate issued on December 31, 2013. <u>Id</u>. On December 31, 2013, Petitioner

filed a notice to invoke discretionary jurisdiction. Ex. JJ. The Supreme Court of Florida, on January 17, 2014, dismissed the case as moot, referencing the 1st DCA's written opinion on rehearing. Ex. KK.

On May 23, 2013, Petitioner filed a petition for writ of mandamus in the trial court. Ex. AA at 1-9. The court denied mandamus relief. Id. at 19. Petitioner appealed. Id. at 20-21. He filed an appeal brief. Ex. CC. The state answered. Ex. DD. Petitioner replied. Ex. EE. On July 7, 2014, the 1st DCA reversed and remanded, directing that the trial court issue an order instructing the clerk of court to provide Petitioner with the requested transcripts of the three-day evidentiary hearing.[6] Ex. FF. Petitioner moved for rehearing. Ex. GG. The 1st DCA denied rehearing. Ex. HH. The mandate issued on August 29, 2014. Ex. II.

Meanwhile, on April 24, 2013, Petitioner filed a Petition for Belated Appeal in the 1st DCA. Ex. T. The 1st DCA directed Petitioner to show cause why the petition should not be converted to a petition alleging ineffective assistance of appellate counsel. Ex. W. Petitioner responded. Ex. X. The 1st DCA determined that the petition should be treated as one alleging a claim of ineffective assistance of appellate counsel. Ex. Y. The 1st DCA, on August 23, 2013, denied the petition. Ex. Z. On September 17,

_____

[6] Respondents state the 1st DCA denied the appeal. Response at 3. Upon review, the record shows otherwise. Ex. FF.

2013, Petitioner sought discretionary review of the 1st DCA's August 23, 2013 decision.  Ex. PP.  The Supreme Court of Florida dismissed the petition finding it was without jurisdiction.  Ex. QQ.

## V.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### INTRODUCTION

In order to prevail on a Sixth Amendment claim of ineffective assistance of trial counsel, Petitioner must satisfy the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).  The Eleventh Circuit, in <u>Reaves v. Sec'y, Fla. Dep't of Corr.</u>, 872 F.3d 1137, 1148 (11th Cir. 2017) (quoting <u>Strickland</u>, 466 U.S. at 687), instructed:  a counsel's performance is deficient only if counsel's errors are "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  And importantly, with regard to the establishment of prejudice requirement, the Eleventh Circuit related that the reasonable probability of a different result must be "a probability sufficient to undermine confidence in the outcome.  <u>Id</u>. (quoting <u>Strickland</u>, 466 U.S. at 694).

Notably, the trial court, in denying the Rule 3.850 motion, referenced the applicable two-pronged <u>Strickland</u> standard as a preface to addressing Petitioner's claims of ineffective assistance of counsel. Ex. H at 51-52. The court not only recognized the applicable standard, it further noted that all that is constitutionally required is reasonably effective counsel, not perfect or error-free counsel. <u>Id</u>. at 52. Also of significance for all of the grounds raised in the Rule 3.850 motion, the court credited the testimony of Petitioner's trial attorneys, Carr Smith and Amanda Kuhn, over that of Petitioner, finding counsels' testimonies more credible and persuasive than Petitioner's. <u>Id</u>.

Upon review of Mr. Smith's evidentiary hearing testimony, the court noted the following. First, that Mr. Smith realized the state's case against Petitioner was a strong one. <u>Id</u>. Second, he said the state's case's strength derived from several factors: (1) the identification by Ms. Numbers; (2) the DNA evidence linking Petitioner to the crime scene by a baseball hat left behind at the scene; (3) the cards and documents discovered in Officer Nelson's new patrol vehicle; and (4) the potentially devastating testimony of cooperating co-defendant Paul Swint. <u>Id</u>. Third, there was no plea offer by the state (meaning Petitioner was left with the choice to go to trial or plead straight up). <u>Id</u>.

Mr. Smith attested that he sought the aid and advice of more experienced employees in the Public Defender's Office and used the Office's resources. <u>Id</u>. at 53. Mr. Smith said he investigated the

alibi witness leads provided by Petitioner, but he did not find a credible or solid alibi witness. Id. Upon investigation, he found that the witnesses were not able to establish an alibi or were otherwise so potentially detrimental to Petitioner's case that the defense could not risk calling the witnesses. Id. Although Mr. Smith found Cynthia Goodman to be the most helpful alibi witness, he ultimately concluded that her presence at trial was potentially very damaging due to her knowledge of Petitioner's violent propensities. Id.

In preparing to challenge the identification testimony of Ms. Numbers, Mr. Smith said that he researched the issue and filed pretrial motions, hoping they would lead to the suppression of both the pre-trial and in-trial identifications. Id. He also sought advice from experienced and qualified attorneys with regard to the DNA evidence. Id. Mr. Smith also sought a jury view of the patrol vehicle in an attempt to demonstrate the unlikelihood of Petitioner being able to hide cards in the vehicle. Id. at 54.

With regard to the claim of failure to call Mr. Swint, Mr. Smith testified that he opted not to call co-defendant Swint as a witness; however, Mr. Smith explained that he was prepared to impeach Swint's trial testimony after locating the impeachment witnesses. Id.

Due to the large gap between the time of the robbery and Petitioner's arrest, Mr. Smith stated that it was apparent that Petitioner could have changed clothes between the robbery and

arrest.  <u>Id</u>.  Mr. Smith testified "he had great difficulty locating witnesses who were firm as to when or even which day they saw the Defendant in relation to the robbery, let alone what he might have been wearing."  <u>Id</u>.  Mr. Smith said he was convinced that it was not in his client's best interest to testify, as Petitioner was a convicted felon and the state's cross examination of him might be quite damaging.  <u>Id</u>.

Ms. Kuhn, another assistant public defender, testified that she knew of the excited utterance exception to the hearsay rule, but did not recall why she did not assert it when she attempted to introduce a description by Ms. Numbers regarding her assailant through cross examination of Officer Sharkey.  <u>Id</u>. at 55.

In seeking post conviction relief, Petitioner criticized Mr. Smith for failing to call Mike Casey, Robert Sharkey, Leslie Boyce, Kevin Storch, Veronica Stamper, Cindy Goodman, Erica Chambers, and Pat Chambers to establish an alibi or a time line of events.  <u>Id</u>. Petitioner also said he wanted Mr. Smith to obtain an identification expert.  <u>Id</u>.  Petitioner questioned the advisability of Mr. Smith's closing argument, expressing surprise at its content.  <u>Id</u>.  Petitioner was also critical of Mr. Smith's handling of the physical evidence, including that which flowed from the unrelated drug arrest, and the failure to bring Petitioner's clothes from his arrest before the jury.  <u>Id</u>. at 55-56.

Although acknowledging his colloquy with the court concerning the right to testify, Petitioner insisted that the blame should

fall on counsel for providing Petitioner with erroneous advice not to testify. <u>Id</u>. at 56. Petitioner admitted that his first criminal arrest occurred twenty-five years prior to the robbery arrest. <u>Id</u>. He also represented that he had been in court and represented by counsel in numerous other criminal cases. <u>Id</u>. Finally, although not presented as a claim in his Rule 3.850 motion, the court construed a claim of factual innocence based on Petitioner's contention that he had a medical condition that would have rendered him physically unable to commit the crime. <u>Id</u>.

After summarizing the evidence presented at the evidentiary hearing, the court made the following assessment of the testimonies and performance of defense counsel:

> The Court accepts the testimonies of Mr. Carr and Ms. Kuhn, and finds that they were not ineffective in their investigation and preparation of the defense in this case. The Court finds that the trial decisions made by Mr. Smith and Ms. Kuhn, which are under attack by the Defendant in the instant Motion, constituted sound trial strategy of defense attorneys. <u>See</u> <u>Stronger v. State</u>, 419 So.2d 1044 (Fla. 1982); <u>Gonzalez v. State</u>, 579 So.2d 145, 146 (Fla. 3d DCA 1991) ("Tactical decisions of counsel do not constitute ineffective assistance of counsel.") Finally, before reaching the merits of the Defendant's arguments, the Court notes that the Defendant established from each witness at the evidentiary hearing that their memories were much better around the time of the crime in question and the Defendant's trial. The Court has taken this fact into consideration.

Ex. H at 56-57.

## GROUNDS OF THE PETITION

## A. Ground One

In ground one, Petitioner raises a claim of ineffective assistance of trial counsel, complaining that counsel failed to call alibi witnesses. Petition at 9-12. As noted by Respondents, Petitioner raised this claim of ineffective assistance of counsel in claim two of his Rule 3.850 motion. Response at 12.

Relying on a number of sound reasons, the trial court rejected this claim. The court recognized that defense counsel made extensive efforts to develop an alibi defense and find witnesses to support the previously noticed alibi claim. Ex. H at 57. In particular, counsel filed a motion for continuance in an attempt to form his defense and prepare for trial. Id. Not only that, the court found that Mr. Smith undertook the appropriate measures to prepare for trial, taking depositions, performing investigations, and attempting to build an alibi defense. Id. But, after hearing Mr. Smith's evidentiary hearing testimony, the court concluded "that none of the witnesses provided by the Defendant, singularly or cumulatively, could have supplied the Defendant with a credible or solid alibi to the crime in question." Id. at 57-58.

Furthermore, the court determined that Mr. Smith made a tactical decision to wait until the last moment to abandon the alibi defense, finding the potential alibi witnesses suffering from credibility issues and poor memory, including an inability to place Petitioner elsewhere at the time of the instant offense. Id. at 58. The court found counsel's assessment of the effectiveness of

the alibi defense persuasive, recognizing that the defense "was dependent upon the testimony of the Defendant's cohorts, most of whom, if not all, were incarcerated, involved in drugs, on drugs during the time of the instant crime and maintained long felony records." Id. In sum, the court was convinced that defense counsel's assessment that the alibi defense, as it stood, was "tantamount to no defense at all," and was persuaded that counsel was accurate in his assessment that such a defense would cause more harm than good. Id. As such, the court found defense counsel was not ineffective for failing to present the alibi defense as counsel's assessment was a reasonable one. Id.

Additionally, the court found counsel's decision not to call Kelvin Williams, Michael Casey, and Paul Swint as defense witnesses constituted another tactical decision. Id. Kelvin Williams and Michael Casey were listed as witnesses to provide rebuttal testimony if the co-defendant, Paul Swint, took the stand against Petitioner. Id. Since the state did not call the co-defendant, the testimony of the rebuttal witnesses became irrelevant and would have been deemed inadmissible hearsay. Id. Mr. Smith explained that he did not call Mr. Swint as a witness because he had been a cooperating state's witness and would have likely implicated Petitioner in the robbery if called to the stand. Id. The court did not find deficient performance by defense counsel in this regard. Id.

"Which witnesses, if any, to call . . . is the epitome of a strategic decision, and it is one that [a court] will seldom, if ever, second guess." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir. 1995), <u>cert</u>. <u>denied</u>, 516 U.S. 856 (1995). In order to demonstrate ineffectiveness, the decision must be so patently unreasonable that no competent attorney would have chosen that path. <u>Dingle v. Sec'y for the Dep't of Corr</u>. 480 F.3d 1092, 1099 (11th Cir. 2007) (quotation omitted), <u>cert</u>. <u>denied</u>, 552 U.S. 990 (2007). <u>See</u> <u>Rizo v. United States</u>, No. 03-20010-CIV, 2014 WL 7152755, at *5 (S.D. Fla. Dec. 15, 2014), <u>aff'd</u>, 662 F. App'x 901 (11th Cir. 2016) (finding counsel's decision not to call alibi witnesses was not unreasonable, particularly where the alibis were not airtight, avoiding leaving the jury with the conundrum as to whether to focus more on the proof of the alibi than on whether the state has met its burden of proof).

In this instance, Petitioner has not shown that Mr. Smith's decision not to present an alibi defense was an unreasonable strategic move that no competent counsel would have taken. Consequently, Petitioner's counsel's decision not to call the alibi witnesses was not unreasonable or otherwise deficient. The Court will not address the prejudice prong as Petitioner has failed to establish the first prong of <u>Strickland</u>.[7]

---

[7] In order to show a violation of the Sixth Amendment, both parts of the test must be satisfied. <u>Bester v. Warden, Att'y Gen. of the State of Ala.</u>, 836 F.3d 1331, 1337 (11th Cir. 2016) (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)), <u>cert</u>.

With regard to the rebuttal witnesses, given the fact that the state did not call the co-defendant to the stand, counsel's decision not to call the rebuttal witnesses was also a sound tactical decision. Based on the record, there was certainly good reason for Mr. Smith to be circumspect about the potential content of Mr. Swint's testimony as Swint had been the state's cooperating witness and had already pled to the crime. Mr. Smith's strategic decision was not so patently unreasonable that no competent attorney would have elected not to call the co-defendant to the stand.

The decision to deny this claim of ineffective assistance of counsel is not inconsistent with Strickland. "Only those habeas petitioners who can prove under Strickland that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ." Marshall, 828 F.3d at 1290 (quoting Kimmelman v. Morrison, 477 U.S. 365, 382 (1986)). This standard is extremely difficult to meet, and even a strong case for habeas relief will not prevail as long as the state court's contrary conclusion was reasonable. Here, the trial court found Petitioner failed to satisfy the performance prong of Strickland and denied post conviction relief. The 1st DCA affirmed the decision of the trial court. Ex. M. The 1st DCA did not give reasons for its

---

denied, 137 S.C. 819 (2017). A court need only address one prong, and if it is found unsatisfied, the court need not address the other. Id.

summary affirmance; however, if there was any reasonable basis for the court to deny relief, the denial must be given deference by this Court.  <u>Cullen v. Pinholster</u>, 563 U.S. 170, 187-88 (2011).

There is a qualifying state court decision and AEDPA deference is warranted.  The adjudication of the state court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.  Therefore, Petitioner is not entitled to relief on ground one because the state court's decision was not contrary to clearly established federal law, <u>Strickland</u> and its progeny, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts.

## B.  Ground Two

Petitioner, in his second ground, raises a claim of ineffective assistance of counsel for failure to properly challenge the pretrial identification as utilizing suggestive procedures in creating the photo lineup, asserting this deficiency in performance was caused by counsel's failure to understand the <u>Biggers</u> analysis. Petitioner raised two grounds in his Rule 3.850 motion with respect to this issue: claims twelve and sixteen.  <u>See</u> Response at 17-18; Ex. H at 68.

As the Court previously noted, before addressing specific grounds for relief, the trial court set forth the <u>Strickland</u> standard in its order.  Ex. H at 51-52.  In addressing grounds

twelve and sixteen of the Rule 3.850 motion, the trial court first
noted that defense counsel filed a motion in limine objecting to
the state's use of the lineup photograph and seeking exclusion of
it at trial. <u>Id</u>. at 69. Of significance, the court granted the
motion in part. <u>See</u> exhibits "F" and "G" attached to the trial
court's order. Ex. H at 148-150. Additionally, the court found
the issue properly preserved for appeal purposes. <u>Id</u>. at 69.

Moreover, the court concluded, based on defense counsel's
testimony at the evidentiary hearing, that he fully understood the
<u>Biggers</u> analysis. <u>Id</u>. Mr. Smith explained why he did not pursue
such an attack, stating that he did not believe that he could
satisfy the preliminary issue because the police did not utilize
suggestive procedures in creating the photo lineup. <u>Id</u>. Believing
it would have been a futile argument that would be readily denied
by the trial court, Mr. Smith decided not to pursue that avenue.
<u>Id</u>.

The Eleventh Circuit explained the evaluation process when
addressing the question of admissibility of an out-of-court
identification:

> This court consistently has followed a
> two-step analysis in assessing the
> constitutionality of a trial court's decision
> to admit out-of-court identifications. First,
> we must determine whether the original
> identification procedure was unduly
> suggestive. <u>Dobbs v. Kemp</u>, 790 F.2d 1499, 1506
> (11th Cir. 1986), <u>modified in part on other
> grounds</u>, 809 F.2d 750 (11th Cir.), <u>cert.
> denied</u>, --- U.S. ----, 107 S.Ct. 2203, 95
> L.Ed.2d 858 (1987). If we conclude that the

> identification procedure was suggestive, we
> must then consider whether, under the totality
> of the circumstances,[8] the identification was
> nonetheless reliable. See Neil v. Biggers, 409
> U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d
> 401 (1972); Dobbs, 790 F.2d at 1506. This
> second stage involves consideration of five
> factors identified by the Supreme Court in
> Neil v. Biggers: opportunity to view, degree
> of attention, accuracy of the description,
> level of certainty, and length of time between
> the crime and the identification. 409 U.S. at
> 199, 93 S.Ct. at 382.

Cikora v. Dugger, 840 F.2d 893, 895 (11th Cir. 1988).

The trial court, after considering the evidentiary hearing testimony, found that defense counsel's performance was not deficient. The court determined that counsel understood the Biggers analysis, but Mr. Smith decided it would be futile to challenge the procedures in creating the photo lineup because they were not suggestive, thus, although aware of the Biggers factors, he did not reach the second stage – the reliability question. Counsel did, however, file a motion in limine, objecting to the state's use of the lineup photograph, and obtained some relief from the court, with the court disallowing the use of the term booking photo or JPIC photo. See Exhibit "G" attached to the order. Ex. H at 150.

---

[8] Importantly, under the totality of the circumstances approach, the Court must ask, even if the police procedure is found to be both suggestive and unnecessary, "whether improper police conduct created a 'substantial likelihood of misidentification.'" Perry v. New Hampshire, 565 U.S. 228, 239 (2012) (quoting Biggers, 409 U.S. at 201).

The trial court employed the Strickland standard and found no deficient performance. Thus, the court found the first prong of the Strickland standard had not been met. The record shows the 1st DCA affirmed the decision of the circuit court in denying this ground, and this Court will presume that the state court adjudicated the claim on its merits, as there is an absence of any indication or state-law procedural principles to the contrary. Since the last adjudication on the merits is unaccompanied by an explanation, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. He has failed in this regard.

Upon review, there is a reasonable basis for the court to deny relief; therefore, the denial must be given deference. The 1st DCA's decision is not inconsistent with Supreme Court precedent, including Stickland and its progeny. Thus, the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts. Accordingly, ground two is due to be denied.

## C. Ground Three

In his third ground, Petitioner asserts that he received the ineffective assistance of counsel for failure to move to suppress the in-court identification of the perpetrator by the victim. Petition at 18. Upon consideration of the record, this claim was exhausted when it was presented in claim thirteen (a claim of

ineffective assistance for failure to object to the victim's in-court identification of the defendant as the perpetrator because Ms. Numbers had attended all pre-trial hearings resulting in a tainted identification) and claim seventeen (a claim of ineffective assistance of counsel for failure to move to suppress the in-court identification by the victim of the defendant as the perpetrator) of the Rule 3.850 motion. <u>See</u> Ex. H at 69-70. As noted by Respondents, the trial court properly employed the <u>Strickland</u> test when it reviewed Petitioner's claim of ineffective assistance of counsel. Response at 23.

In denying these claims, the trial court first noted that the victim identified Petitioner in a pre-trial array of photographs. Ex. H at 70. The court also found: "[t]here is no indication that the victim's identification of the Defendant as the assailant was tainted[.]" <u>Id</u>. The court recognized that defense counsel did make some argument to the jury that the identification was tainted. <u>Id</u>. Additionally, the court noted that defense counsel filed a motion in limine to suppress the victim's pre-trial identification, as well as any in-court identification of the defendant by the victim. <u>Id</u>. <u>See</u> exhibit "H" attached to the order, Defendant's Third Motion in Limine to Suppress Pretrial Identification and In-Court Identification. Ex. H at 151-53. The trial court opined that defense counsel could not be blamed for the trial court's decision to deny the defense motion. <u>Id</u>. at 70. Additionally, the court pointed out that defense counsel raised the issue of the denial of

- 25 -

the motion to suppress the in-court identification in a motion for new trial. _Id_. _See_ exhibit "J" attached to the order. Ex. H at 155-56.

Based on all of the above, the trial court concluded that, in its assessment, there was no other action that defense counsel could or should have taken with regard to the identification issue, and counsel was not ineffective for failing to take any additional steps. _Id_. Not only did the court find that counsel's performance was not deficient, it also found Petitioner failed to satisfy the prejudice prong of the _Strickland_ test. _Id_. at 71. The 1st DCA affirmed. Ex. M.

In undertaking a review of this type of claim, the key question is whether the photographic lineup was irreparably suggestive. _O'Brien v. Wainwright_, 738 F.2d 1139, 1140 (11th Cir. 1984), _cert_. _denied_, 469 U.S. 1162 (1985). In _Simmons v. United States_, 390 U.S. 377, 384 (1968), the Supreme Court held that an in-court eyewitness identification following a pretrial identification by photograph will be set aside "only if the photograph identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." The trial court remained unconvinced by Petitioner's argument that the pretrial identification by photograph was improperly suggestive. Further scrutiny of the reliability of identification is uncalled for under these circumstances because in order to reach the second sage of inquiry,

the court must first be convinced that the identification procedure was suggestive, otherwise, the inquiry is at end.

Again, the post conviction court applied the two-pronged <u>Strickland</u> standard, finding Petitioner failed to satisfy both prongs of the two-part test. Of importance, the 1st DCA affirmed the decision of the circuit court in denying this ground, and this Court will presume that the state court adjudicated the claim on its merits, as there is an absence of any indication or state-law procedural principles to the contrary. Since the last adjudication on the merits is unaccompanied by an explanation, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. He has failed in this regard.

Upon review, there is a reasonable basis for the court to deny relief; therefore, the denial must be given deference. The 1st DCA's decision is not inconsistent with Supreme Court precedent, including <u>Stickland</u> and its progeny. Thus, the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts. Accordingly, ground three is due to be denied.

**D.  Ground Four**

In his fourth ground, Petitioner re-raises the claims of ineffective assistance of trial counsel presented in issues twelve and thirteen of his post conviction motion, and adds one new claim, a claim of ineffective assistance of counsel for failure to object

to prosecutorial misconduct. Petition at 21. To the extent Petitioner is re-raising claims of ineffective assistance of counsel previously addressed by this Court, no further review is necessary. The Court will consider the claim of ineffective assistance of counsel for failure to object to prosecutorial misconduct as it has not been previously addressed in this opinion.

Petitioner did raise a claim of ineffective assistance of counsel for failure to object to fabrications made by the state during opening arguments (claim 14 of the Rule 3.850 motion),[9] and that claim is ripe for review. Ex. I at 35-36. Specifically, the opening statement at issue is: "[a]nd she [Ms. Susan Numbers] will tell you that he [the detective] showed her pictures and that when she looked through those pictures, she picked out one person." Id. at 35. In context, the prosecutor made the following remarks in opening statement:

> And she will tell you that he showed her pictures and that when she looked through those pictures, she picked out one person. She picked out the one person who robbed her the day before. And the photograph of the one person that she picked out was the defendant, William Netting.

Ex. C at 22-23.

Thereafter, during the course of the trial, Ms. Numbers testified:

---

[9] Respondents refer to claim 15 of the Rule 3.850 motion, but that claim is a claim of prosecutorial misconduct, not a claim of ineffective assistance of counsel. See Response at 25.

A    Well, at that point I flipped them [the photographs] all over and I immediately shoved all but two aside.  And then there were two that I looked at more closely.  **And then I took one of the two and shoved that aside and it left me with just one**.

. . . .

A    I told the detective at that point in time that I believed this was the man that had attacked me, although I could not be 100 percent sure.

. . . .

A    He [the detective] asked me what percentage did I believe I could identify this, and I said at least 75 percent, at which point in time he handed me a pen and said, Write that on the back and sign it, which is what I did.

Q    And the front of that -- is that the picture of the defendant that's on trial today?

A    **That's the picture that I picked out**.

Ex. C at 57-58 (emphasis added).

In denying post conviction relief, the trial court found the prosecutor's opening statement was proper and supported by evidence.  Ex. H at 71.  Upon finding the statements were properly made, the court said trial counsel could not be deemed ineffective for failing to object to the prosecutor's opening remarks.  Id.  In support, the court highlighted Ms. Number's testimony that she shoved the other photograph aside, leaving just one.  Id.

Upon review, the opening statements were supported by the evidence presented at trial.  Ms. Numbers testified that pre-trial,

she shoved one picture aside, leaving one picture, which she believed to be a photograph of the man that had attacked her. She explained that she was 75 percent sure that the picture was of the perpetrator.

The cross examination of Ms. Numbers is telling. Defense counsel asked Ms. Numbers if she at first narrowed it to two photographs. Ex. C at 62. She confirmed that was the case. Id. She also confirmed that she was only 75 percent sure that the photograph she picked out was the perpetrator. Id.

The circuit court rejected Petitioner's claim of ineffective assistance of counsel, finding he failed to demonstrate deficient performance by defense counsel, failing to satisfy the first prong of Strickland. The 1st DCA affirmed without a written decision. Ex. M. The Court will presume, under these circumstances, the 1st DCA adjudicated the claim on its merits as there is an absence of any indication or state-law procedural principles to the contrary. Petitioner has failed to meet his burden to show that there was no reasonable basis for the state court to deny relief.

Upon review, there is a reasonable basis for the court to deny relief; therefore, the denial must be given deference. Thus, deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA. Given due consideration, its decision is not inconsistent with Supreme Court precedent, including Strickland and its progeny. The state court's adjudication of this claim is not contrary to or an unreasonable

application of <u>Strickland</u>, or based on an unreasonable determination of the facts. As such, ground four is due to be denied.

Alternatively, Petitioner has failed to carry his burden of showing that his counsel's representation fell outside the wide-range of reasonably professional assistance. Moreover, even assuming deficient performance, Petitioner has not shown resulting prejudice. Indeed, he has not shown that a reasonable probability exists that the outcome of the case would have been different if his counsel had objected to the prosecutor's opening statement or her "fabrications and obfuscations [sic]." Petition at 21. In sum, Petitioner's ineffectiveness claim is without merit since he has neither shown deficient performance nor resulting prejudice.

### E.  Ground Five

In his fifth ground, Petitioner raises another claim of ineffective assistance of counsel. He submits that his defense counsel was ineffective for failing to call Officer Sharkey. Petition at 24. Petitioner raised this issue in his Rule 3.850 motion in the state trial court as claim four. He claimed Officer Sharkey could have attested to the vague description given by the victim at the crime scene, that of a white male, 5'10", and unshaven. Ex. I at 18.

In finding this claim of ineffective assistance of counsel to be without merit, the court opined:

> First and foremost, Defense Counsel conducted
> an effective cross-examination of Officer
> Sharkey. There is nothing in the record to
> indicate that Defense Counsel was unable to
> address any questions or concerns from Officer
> Sharkey without making him a Defense witness.
> In reference to Argument Three above, the
> Officer still would have been prohibited from
> testifying as to the victim's identification
> of the perpetrator because such a statement
> would remain inadmissible hearsay. In
> addition, despite the Defendant's contention,
> Officer Sharkey could not testify as to the
> photo spreads because Officer Sharkey neither
> compiled the photo spreads nor administered
> them to the victim. Thus, the Officer was not
> qualified to testify as to the content of the
> photo spreads. The proper person to testify
> about the photo spreads must have been the
> creator of the spreads, Detective Gagnon.
> Upon review of the trial transcripts, the
> Court finds that Defense Counsel properly
> questioned Detective Gagnon regarding the
> photo spreads, specifically eliciting the fact
> that he created them. (Exhibit "E," pgs. 145,
> 149.)

Ex. H at 60-61.

The 1st DCA affirmed this decision. Ex. M. There is a
reasonable basis for the state court to deny relief, and this
decision must be given deference. The 1st DCA's decision is not
inconsistent with Supreme Court precedent, and the state court's
adjudication of this claim is not contrary to or an unreasonable
application of <u>Strickland</u>, or based on an unreasonable
determination of the facts.

The record before the Court supports the conclusion that
counsel's performance was not deficient. It shows that on cross
examination of Ms. Numbers, defense counsel asked her about the

description of the perpetrator of the robbery she gave to Officer Sharkey. Ex. C at 61. Ms. Numbers remembered giving some description, but she admitted that she did not provide a very strong or detailed description. Id. She testified that the perpetrator was wearing a Florida State baseball cap and sunglasses. Id. at 61-62. Finally, she stated she could not identify any clothing of the perpetrator, other than she just knew that the individual had on long pants because she did not recall seeing hairy legs. Id. at 62.

Counsel's effective cross examination of Ms. Numbers before the jury showed that Ms. Numbers was unable to give a detailed or strong description of her assailant immediately after the robbery. Indeed, she readily admitted that she was unable to provide specific descriptors of the assailant, as he had on sunglasses and a baseball cap, and she was unable to describe his clothing.

When considering the claim of ineffective assistance of counsel, this Court must try to eliminate the distorting effects of hindsight, as counseled to do so in Strickland, 466 U.S. at 689. This Court must consider that counsel is given wide latitude in making tactical decisions, like selecting who to call as a witness. Id. Although counsel did not call Officer Sharkey, Mr. Smith effectively cross examined Ms. Numbers, which revealed her inability to provide a detailed and strong description of the perpetrator of the robbery immediately after the incident. The Court recognizes, "[t]here are countless ways to provide effective

- 33 -

assistance in any given case." Id.  Under these circumstances, counsel's performance was not deficient and Petitioner is not entitled to habeas relief.


## F.  Ground Six

In ground six of his Petition, Petitioner raises a claim of ineffective assistance of counsel for failure to impeach the testimony of Officer Nelson, Rosann Amondala, and Susan Numbers. Petition at 27.  Petitioner exhausted this ground in the state court system in claims nine, ten and eleven of his Rule 3.850 motion.  Id.  The trial court rejected Petitioner's contention that counsel was ineffective for failing to introduce evidence, impeach or elicit prior inconsistent statements of Officer Nelson.  Ex. H at 66.  After review of the trial transcript, the court found that defense counsel impeached Officer Nelson through cross examination. Id.  The court, after further review of the record, determined that counsel did in fact impeach Ms. Amondala through cross examination. Id. at 67.  Also of import, the court concluded that a Richardson Hearing, suggested by Petitioner to be desirable and necessary, "would have been futile[.]" Id.

Finally, with regard to Ms. Numbers, the court found that counsel vigorously questioned Ms. Numbers regarding her identification of Petitioner, and properly challenged the

credibility of her identification through cross examination.[10] <u>Id</u>. at 68. Afterwards, counsel argued that Ms. Numbers could only identify her assailant with 75 percent certainty, as she admitted on cross examination that she was only 75 percent certain that the photograph she selected was her assailant's photograph, casting some doubt on her identification of the defendant as the assailant. <u>Id</u>. Again, the court concluded that counsel did not render ineffective assistance in his cross examination. <u>Id</u>.

"Strickland does not guarantee perfect representation, only a 'reasonably competent attorney.'" <u>Richter</u>, 562 U.S. at 110 (quoting <u>Strickland</u>, 466 U.S. at 687) (internal quotation omitted). Here, defense counsel's representation did not so undermine the proper functioning of the adversarial process that Petitioner was deprived of a fair trial. On the contrary, Petitioner received effective representation.

It is noteworthy that "there is no expectation that competent counsel will be a flawless strategist or tactician[.]" <u>Richter</u>, 562 U.S. at 110. Again, perfection is not the standard. Petitioner has the burden to show that his counsel's representation fell below an objective standard of reasonableness. Petitioner has failed to meet this burden. He has not shown that his attorney's

---

[10] The trial court did not deem counsel's performance deficient when questions were not allowed based on rules governing admissibility, finding counsel cannot be blamed for the rulings of the trial court. Ex. H at 68. <u>See</u> Ex. C at 65.

representation was so filled with such serious errors that defense counsel was not functioning as counsel guaranteed by the Sixth Amendment, admittedly a high bar that is difficult to reach. <u>Id</u>. at 104 (citation omitted).

In denying claims nine, ten and eleven of the Rule 3.850 motion, the court concluded that counsel's performance was not deficient under <u>Strickland</u>. The 1st DCA affirmed. Ex. M. Its adjudication on the merits is unaccompanied by an explanation. Thus, the Court presumes that the 1st DCA adjudicated the claim on its merits, as there is an absence of any indication or state-law procedural principles to the contrary. Now it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. If he fails to accomplish this task, he cannot prevail on ground six.

Upon review, there is a reasonable basis for the court to deny relief; therefore, the denial must be given deference. In this instance, deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA. Given due consideration, its decision is not inconsistent with Supreme Court precedent, including <u>Stickland</u> and its progeny. The state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts. As such, ground six is due to be denied.

## G. Ground Seven

In his seventh ground for habeas relief, Petitioner asserts that he received the ineffective assistance of counsel for failure to file a motion in limine (or a motion to suppress) seeking suppression of the evidence found in Officer Nelson's patrol car. Petition at 30-31. Petitioner presented this argument in claim six of his Rule 3.850 motion, and the trial court denied this ground finding that such a motion would not have been granted, there was nothing unconstitutional about the arrest, and as a result, Petitioner has failed to satisfy the prejudice prong of Strickland because, if the suppression motion would not have properly been granted, prejudice cannot be established in failure to file the motion. Ex. H at 62-63. The 1st DCA affirmed without opinion. Ex. M.

This Court in Grinard-Henry v. United States, No. 8:03CR-437T17MAP, 2006 WL 2265416, at *3 (M.D. Fla. Aug. 8, 2006), explained:

> Defense counsel cannot be deemed to have performed deficiently by failing to file a motion that would have been futile. For the same reason, [the petitioner] cannot satisfy the "prejudice" prong of Strickland. See also Salcedo-Palma v. United States, 2005 WL 1243775 (M.D. Fla. 2005) (Bucklew, J.) (finding that defense counsel was not ineffective in failing to file a "futile" motion to suppress because the defendant signed a plea agreement in which he admitted that the vessel on which he was traveling was "subject to the jurisdiction of the United States").

In the case at bar, the trial court determined that a motion to suppress would have been futile; therefore, counsel was not ineffective for failing to file a motion seeking suppression of the evidence. As such, Petitioner's defense counsel cannot be deemed to have performed deficiently by failing to file the motion, and it follows that Petitioner cannot satisfy the prejudice prong of Strickland due to the futility of such a motion.

Even if counsel's performance was deemed deficient, Petitioner has not established prejudice, failing to meet Strickland's prejudice prong. Petitioner has failed to show "that it was 'reasonably likely' that, but for counsel's deficient performance, the result of the proceeding would have been different." Stoddard v. Sec'y, Dep't of Corr., 600 F. App'x 696, 709 (11th Cir.) (per curiam) (citation omitted), cert. denied, 136 S.Ct. 114 (2015). Therefore, he is not entitled to habeas relief.

Petitioner is not entitled to relief on ground seven of the Petition, the claim of ineffective assistance of trial counsel. Deference, under AEDPA, should be given to the state court's decision. The state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts. Consequently, Petitioner is not entitled to habeas relief on ground seven.

## H.  Ground Eight

Petitioner, in his eighth ground for relief, raises a claim of ineffective assistance of counsel for failure to file a motion to suppress evidence recovered at the crime scene. Petition at 34. Apparently, Petitioner suspects or surmises that intermeddlers handled the evidence and broke the chain-of-custody of the evidence found in the grocery store parking lot: the map and the baseball hat. Petitioner raised this claim in issue seven of his Rule 3.850 motion, and the trial court addressed it, finding that even if the chain-of-custody had been broken and the evidence handled by intermeddlers, that in and of itself is not enough to render the evidence inadmissible. Ex. H at 63. The court opined that a mere possibility of tampering is not enough; a defendant bears the burden of showing there was a probability of tampering with the evidence. Id.

In denying this ground, the trial court described Petitioner's belief that intermeddlers handled the cap and map as a speculative belief, and this "mere possibility of tampering," did not prove a probability of tampering with the evidence. Id. at 64. To support this holding, the court relied on the fact that Petitioner was not present at the crime scene when the items were found. Id. The court further found that Petitioner had "no knowledge of whether or not the items were actually intermeddled with by unauthorized persons." Id. The court was persuaded by Mr. Smith's testimony at the evidentiary hearing revealing that he understood the legal

standards involved, but also believed the argument to be non-meritorious. Id. Finally, the court denied this ground, finding that a motion to suppress would not have properly been granted; thus, Petitioner failed to establish prejudice under Strickland. Ex. H at 64. The 1st DCA affirmed. Ex. M.

Again, the post conviction court applied the two-pronged Strickland standard. Of importance, the 1st DCA affirmed the decision of the trial court in denying this ground, and this Court presumes that the 1st DCA adjudicated this claim on its merits, as there is an absence of any indication or state-law procedural principles to the contrary. Since the last adjudication on the merits is unaccompanied by an explanation, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. He has failed to do so.

There is certainly a reasonable basis for the court to deny relief; therefore, the denial must be given deference by this Court. The 1st DCA's decision is not inconsistent with Supreme Court precedent, including Stickland and its progeny. Thus, the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts. Accordingly, ground eight is due to be denied.

## I. Ground Nine

In his ninth ground, Petitioner seeks habeas relief based on a claim of ineffective assistance of counsel for misadvising Petitioner not to take the stand. Petition at 37. Upon review of the trial record, after the state rested, defense counsel notified the court that Petitioner intended to become a witness. Ex. D at 219. The following colloquy took place:

> THE COURT: Okay. Mr. Netting, if you'll come forward, please. Stand before the bench with your counsel.
>
> Mr. Netting, the court has now received all of the evidence in this case. I have noted that your attorney has advised the court that you wish to become a witness in this case, you wish to testify. It is your absolute constitutional right to remain silent and not to become a witness in this trial, but it is also your right, of course, to become a witness.
>
> If you chose [sic] not to testify, the jury will be instructed by this court that you have [an] absolute right to remain silent and that the jury must not view this as an admission of guilt or be influenced in any way by your decision. **However, I must advise you that the decision is yours alone.** Your attorneys are there to advise you and give you their advice based on their knowledge and experience, **but the decision rests solely with you.**
>
> Have you had an opportunity to consult with your attorney and listen to your attorney's advice about becoming a witness in this trial?
>
> THE WITNESS: Yes, I have.
>
> THE COURT: Having considered your attorney's advice, is it your choice to become a witness in this trial?

THE WITNESS: I believe it would be wise.

Ex. D at 219-20 (emphasis added).

The trial court asked the following questions of counsel:

THE COURT: State, are there any felony convictions or crimes of dishonesty that you will be attempting to use to impeach Mr. Netting during his testimony?

MS. RUSSELL: Yes, Your Honor, Mr. Netting has one prior felony conviction and he has five prior crimes of dishonesty.

THE COURT: And, Mr. Smith and Ms. Kuhn, were you aware of those prior convictions.

MS. KUHN: We were.

MR. SMITH: Yes, Your Honor.

THE COURT: And have you discussed that with Mr. Netting with regard to how it can be used during cross examination?

MS. KUHN: We have, Your Honor. I would want to know ahead of time if the State's intending to ask about the exact dates of each of those. I want to make sure he doesn't open any doors by not knowing the exact dates of every charge.

MR. RUSSELL: Your Honor, I think that that would depend on what the defendant says during his cross examination.

THE COURT: The law is clear as to how felony convictions and crimes of dishonesty may be asked of a witness. If there is something outside of those questions, Have you been convicted of a felony, if there is anything outside of that, please proffer it before you go into those questions on your cross examination of the defendant.

MR. RUSSELL: Yes, Your Honor.

> THE COURT: Any other issues regarding his prior convictions?
>
> MR. KUHN: No, Your, Honor.

Id. at 220-21.

The trial court then inquired of Petitioner:

> THE COURT: Mr. Netting, do you have an understanding of how your prior felony convictions and crimes of dishonesty can be used against you while you are testifying in this case?
>
> THE WITNESS: I understand it's not good, yes.
>
> THE COURT: And knowing that, you still wish to become a witness?
>
> THE WITNESS: Yes, ma'am.
>
> THE COURT: Okay. If you change your mind and choose not to become a witness between the time that the jury is brought in, please let your attorneys know and they will advise me.
>
> THE WITNESS: Okay.

Id. at 221-22.

After a short pause in the proceedings, Ms. Kuhn asked for another opportunity to confer with Mr. Netting. Id. at 222. After a brief recess, Ms. Kuhn announced that Petitioner no longer desired to be a witness. Id. at 223. When the court asked about the reversal of his decision, Petitioner responded that he had a further conference with his counsel. Id. When asked if he needed more time to speak with his attorneys about his decision,

Petitioner responded: "I'm going to take the recommendation. They recommended I don't, so I accept that."[11] Id.

With regard to the criminal defendant's right to testify, the Eleventh Circuit opined:

> It is by now abundantly clear that a criminal defendant has a fundamental right to testify on his own behalf at trial. Rock v. Arkansas, 483 U.S. 44, 52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc). That right "cannot be waived either by the trial court or by defense counsel," and a "criminal defendant cannot be compelled to remain silent by defense counsel." Teague, 953 F.2d at 1532.

Nejad v. Att'y Gen., State of Ga., 830 F.3d 1280, 1289-90 (11th Cir. 2016).

Of course, the record reflects that defense counsel did not compel Petitioner to remain silent. In fact, defense counsel announced to the court that Petitioner intended to take the stand. The court thoroughly explained that it was Petitioner's right to decide whether to take the stand. The court advised Petitioner it was his decision alone. The court explained that the attorneys were there to offer advice, but ultimately it was Petitioner's sole decision. Importantly, Petitioner then heard that the state would conduct cross examination, and Petitioner had a prior felony and

---

[11] Page 224 of the trial transcript may be found in exhibit "E" attached to the trial court's order denying the Rule 3.850 motion. Ex. H at 143 (page 224 of the trial transcript). That page is missing from the trial transcript provided as Exhibit D.

five misdemeanors involving dishonesty. His attorneys confirmed that they were aware of these prior convictions. Petitioner stated that he understood that the impact of this testimony would not be good, but he still desired to be a witness. After further conference with his attorneys, Petitioner changed his mind and told the court that he decided to accept his counsels' recommendation and not take the stand. Again, this was clearly Petitioner's choice and his decision.

In reviewing this ground, presented as claim eight in the Rule 3.850 motion, the trial court found that it was without merit as the trial transcript refuted Petitioner's claim. Ex. H at 64. The court referenced the detailed colloquy between the court and Petitioner concerning his right to remain silent or to take the stand. Id. at 65. After reviewing the colloquy, the court found that Petitioner "understood his constitutional right to testify and voluntarily and knowingly waived it." Id. at 66. After considering the testimony presented at the evidentiary hearing, the court credited the testimony of Petitioner's defense counsel relating that Petitioner decided to take the stand. Id. Not only did the trial court deny this ground, the 1st DCA per curiam affirmed, without a written opinion.

If there is any reasonable basis for the court to deny relief, the denial must be given deference. With regard to this claim of ineffective assistance of counsel, AEDPA deference should be given

to the state court's decision. The state court's ruling is well-supported by the record and by controlling case law, <u>Strickland</u> and its progeny. Petitioner raised the issue in his post conviction motion, the trial court denied the motion, and the appellate court affirmed. This Court concludes that the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts. Petitioner is not entitled to habeas relief on ground nine.

## J. Ground Ten

In ground ten, Petitioner claims he has been denied substantial and procedural rights due to the 1st DCA's denial of his Petition for Belated Appeal. Petition at 39-40. In this state petition, Petitioner alleged that his post conviction counsel failed to file a proper designation and had to have supplemental records sent to the appellate court. Ex. T at 3. Additionally, Petitioner claimed that his post conviction counsel did not have the complete record to establish sound arguments based on the record. <u>Id</u>.

It is abundantly clear Petitioner is not entitled to post conviction relief based on this claim. The record shows that Petitioner did file a document entitled a Petition for Belated Appeal in the 1st DCA. Ex. T. The 1st DCA, after directing Petitioner to show cause why the petition should not be converted to a petition alleging ineffective assistance of appellate counsel,

Ex. W, held that the petition should be treated as one alleging a claim of ineffective assistance of appellate counsel. Ex. Y. Upon review, there was no error; in the state petition, Petitioner complained about the actions of his post conviction counsel on appeal of the denial of the Rule 3.850 motion. Ex. T at 3. The 1st DCA, on August 23, 2013, denied the state petition. Ex. Z.

Petitioner claims the state court erred in construing the petition as one of ineffective assistance of appellate counsel, and he urges this Court to find that this error prevented his post conviction appeal from ever being addressed, and to find that he is entitled to consideration of his claims. Petition at 39-40. There are several glaring weaknesses in Petitioner's argument. First, by this ground, Petitioner alleges a defect in the state post conviction process; therefore, he does not state a claim for habeas relief.

The Eleventh Circuit has found: "defects in state collateral proceedings do not provide a basis for habeas relief." Carroll v. Sec'y, DOC, 574 F.3d 1354, 1365 (11th Cir.) (citations omitted), cert. denied, 558 U.S. 995 (2009). As such, the claim raised in ground ten is not a claim of constitutional dimension. Alston v. Dep't of Corr., Fla., 610 F.3d 1318, 1325-26 (11th Cir.) (recognizing that challenges to a collateral proceeding do not undermine the legality of the conviction itself; therefore, habeas relief is inappropriate), cert. denied, 562 U.S. 1113 (2010).

Petitioner has failed to present a claim of constitutional dimension; therefore, he is not entitled to habeas relief on ground ten.

Second, Petitioner received the process to which he was entitled. Indeed, his post conviction appeal was addressed in the state courts. The record demonstrates that he filed a Rule 3.850 motion. Ex. I. Once it was determined that an evidentiary hearing should be conducted, he was appointed counsel. A full-blown evidentiary proceeding took place over a period of several days. The trial court denied relief. Ex. H at 50-156. Petitioner appealed.[12] Id. at 167; Ex. K. The 1st DCA affirmed. Ex. M.

Third and finally, Petitioner has not demonstrated that the denial of his petition for belated appeal alleging the ineffective assistance of post conviction counsel was contrary to or an unreasonable application of federal law. Response at 51. As such, he is not entitled to relief.

### K. Ground Eleven

In his eleventh and final ground for relief, Petitioner claims the denial of proper consideration of his claims of ineffective assistance of trial counsel due to the trial court's denial of the amended 3.850 motion and/or habeas corpus for ineffective assistance of post conviction counsel. Petition at 42.

---

[12] The record shows that a supplemental record was received by the 1st DCA on August 20, 2012, upon request from the 1st DCA. Response to Order to Show Cause (Doc. 49 at 19-20).

Petitioner complains that his post conviction issues have been barred by the Florida Courts, contrary to the Due Process and Equal Protection Clauses.  Id. at 43.

As previously noted, the record shows that Petitioner filed a Rule 3.850 motion, the motion was addressed and denied, and the 1st DCA affirmed.  Sometime thereafter, Petitioner filed an Amended 3.850 Motion and/or Habeas Corpus for Ineffective Assistance of Postconviction Counsel.  Ex. N at 26-54.  The trial denied this motion, finding it had previously heard and ruled upon a Rule 3.850 motion.  Id. at 55.  Petitioner appealed this decision, id. at 56; Ex. O. Ex. P, and the 1st DCA affirmed.  Ex. Q.  On rehearing, the 1st DCA issued a written opinion, finding Florida law does not recognize a right to the effective assistance of post conviction counsel, finding no binding federal precedent to the contrary, and affirming the decision below.  Ex. S at 10.

Complaining about these negative rulings, Petitioner alleges he is entitled to relief because Florida fails to provide "non futile" vehicles to obtain relief in the state court's multi-tiered system.  Petition at 42.  Petitioner's challenge to the effectiveness of Florida's state court collateral proceedings does not undermine the legality of the conviction itself; therefore, Petitioner is not entitled to habeas relief on this ground. Petitioner merely complains about the availability of effective,

"non futile" post conviction process in Florida. This is not a claim of constitutional dimension.

Respondents contend this ground is not cognizable on habeas corpus review as the purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States, not to consider a challenge to state court deficiencies. Response at 52-54. See Coleman v. Thompson, 501 U.S. 722 (1991). The writ of habeas corpus under 28 U.S.C. § 2254 "was not enacted to enforce State-created rights." Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000) (citing Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988)), cert. denied, 531 U.S. 1170 (2001). The Eleventh Circuit allows that only in cases of federal constitutional error will a federal writ of habeas corpus be available. See Jones v. Goodwin, 982 F.2d 464, 471 (11th Cir. 1993); Krasnow v. Navarro, 909 F.2d 451, 452 (11th Cir. 1990).

It has long been held that it is not the province of this Court to reexamine state-court determinations on issues of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process[,]'" as it was here. Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976)). This

Court is bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate. McCoy v. Newsome, 953 F.2d 1252, 1264 (11th Cir. 1992) (per curiam), cert. denied, 504 U.S. 944 (1992).

At most, Petitioner alleges a defect in the state post conviction process. As a result, his claim is not construed to be related to the cause of his detention. Consequently, there has been no breach of a federal constitutional mandate in the instant case.

In conclusion, the Court finds the claim raised in ground eleven amounts to an attack on the state post conviction proceedings collateral to Petitioner's detention. Quince v. Crosby, 360 F.3d 1259, 1261-62 (11th Cir. 2004), cert. denied, 543 U.S. 960 (2004). Since ground eleven presents an issue that is not cognizable in this proceeding, this ground cannot provide a basis for federal habeas corpus relief. Therefore, the claim raised in ground eleven is due to be denied.

### VI. MOTION FOR RECONSIDERATION

The final issue before this Court is Petitioner's Motion for Reconsideration (Motion) (Doc. 54). The Court construes the Motion to be a motion for reconsideration of the Court's Order (Doc. 53) striking the Reply and Supplemental Exhibits (Doc. 52). In its Order (Doc. 53), the Court allowed Petitioner to file a reply of not more than fifty-six pages, and advised Petitioner there should

be no further submission of documents as the Appendices have been accounted for in Respondents' submissions to the Court. Since the striking of the Reply and Supplemental Exhibits, Petitioner has filed a Reply (Doc. 56) in compliance with the Court's Order (Doc. 53).

Petitioner asks that this Court accept his earlier filed reply and supplemental exhibits and/or provide him with an evidentiary hearing. The Court has considered Petitioner's recently filed Reply (Doc. 56), not the stricken reply and supplemental exhibits (Doc. 52) for the reasons stated in its Order (Doc. 53). See also Orders (Docs. 48 & 51). Petitioner was provided with an evidentiary hearing in the state trial court and no further evidentiary proceedings are required in this Court. Therefore, Petitioner's Motion is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.   Petitioner's Motion for Reconsideration (Doc. 54) is **DENIED**.

2.   The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

3.   The **Clerk of the Court** shall enter judgment accordingly and close this case.

4. If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability.**[13] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 9th day of February, 2018.

_____
BRIAN J. DAVIS
United States District Judge

---

[13] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.

sa 1/31
c:
William L. Netting, Jr.
Counsel of Record